Citation Nr: 1554496 
Decision Date: 12/31/15 Archive Date: 01/07/16

DOCKET NO. 07-09 529 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUES

1. Entitlement to an evaluation in excess of 20 percent for lumbar spine spondylosis, prior to December 1, 2010. 

2. Entitlement to an evaluation in excess of 40 percent for lumbar spondylosis, beginning on December 1, 2010. 

3. Entitlement to separate ratings for neurological manifestations, including bladder and/or bowel impairment, of the service-connected residuals of lumbar spine spondylosis


REPRESENTATION

Appellant represented by: Disabled American Veterans



ATTORNEY FOR THE BOARD

Steve Ginski, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the U.S. Army from July 1970 to January 1972. 

This case comes before the Board of Veterans' Appeals (Board) on appeal from a May 2006 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina, which denied an increased rating for a lumbar spine disability, evaluated as 20 percent disabling. The Veteran perfected a timely appeal of this determination.

Subsequently, the claim of entitlement to an increased rating for a lumbar spine disability, evaluated as 20 percent disabling, was denied by the Board in an April 2010 decision. The Veteran appealed this denial to the Court of Appeals of Veteran Claims (Court). In November 2010, the Court granted a Joint Motion for Remand (JMR) filed by the parties, which requested that the Board's April 2010 decision be vacated and remanded.

By a January 2011 rating decision, the RO re-characterized the Veteran's lumbar spine disability as lumbar spine spondylosis and denied an increased rating in excess of 20 percent for this disability. Also, the RO granted secondary service connection for radiculopathy of the right and left lower extremities, with each extremity evaluated as 10 percent disabling, effective from September 20, 2012.

In June 2011, the Board remanded the appeal concerning the issue of an increased rating for lumbar spine spondylosis for further development. At that time, the Board also determined that the initial ratings for radiculopathy of the right and left lower extremities were part of the appeal concerning an increased rating for lumbar spine spondylosis.

In a September 2012 rating decision, the Agency of Original Jurisdiction (AOJ) increased the rating for the Veteran's lumbar spine spondylosis from 20 percent to 40 percent disabling, effective August 2, 2011. 

In December 2012, the Board denied a disability rating in excess of 20 percent for lumbar spine spondylosis prior to December 1, 2010, but granted a disability rating of 40 percent, but no higher, thereafter (i.e., from December 1, 2010) for lumbar spine spondylosis. The Board also denied initial disability ratings in excess of 10 percent for right and left lower extremity radiculopathy. 

As part of the Board's December 2012 decision/remand, the issue of entitlement to individual unemployability due to service-connected disabilities (TDIU) was remanded for further development. Specifically, the Board directed the RO/AMC to determine whether a TDIU rating was warranted under 38 C.F.R. § 4.16(a), to include on an extraschedular basis. 

In pertinent part, the Board also referred the issue of entitlement to service connection for bladder and bowel incontinence as secondary to lumbar spine spondylosis, and in its remand instructions directed the RO/AMC to adjudicate this issue with issuance of a formal rating. 

The Veteran subsequently appealed to the Court that portion of the Board's December 2012 decision that denied a rating in excess of 20 percent for lumbar spine spondylosis prior to December 1, 2010, and a rating in excess of 40 percent since December 1, 2010. Pursuant to a June 2013 Joint Motion for Partial Remand (JMR), the parties agreed that the Board had failed to provide adequate reasons and bases consistent with the Court's decision in Young v. Shinseki, 25 Vet.App. 201, 203 (2011)(Referral "is appropriate only when the Board lacks jurisdiction over the matter being referred; remand is the appropriate action when the Board has jurisdiction over the matter, but further development is needed."). The Board notes that the JMR specifically did not challenge that aspect of the Board's decision that denied entitlement to initial disability ratings in excess of 10 percent for left and right lower extremity radiculopathy. As such, those issues are considered finally denied by the 2012 Board decision, and are no longer on appeal. With regard to the Veteran's increased rating claim, the JMR determined that the Board erred in failing to offer adequate reasons or bases for its referral of the issue of entitlement to service connection for bladder and bowel incontinence as secondary to lumbar spine spondylosis. This was especially so in light of evidence of record that suggested the Veteran experienced bladder/bowel problems that were possibly due to his low back disability. Thereafter, a July 2013 Court Order vacated that portion of the Board's December 2012 decision that denied a rating in excess of 20 percent for lumbar spine spondylosis prior to December 1, 2010, and a rating in excess of 40 percent since December 1, 2010, for action consistent with the terms of the Joint Motion. 

Pursuant to the directives in the June 2013 JMR, in November 2013, the Board remanded the issues of increased disability ratings for the Veteran's lumbar spine disability and whether a separate rating should be assigned for any associated bowel or bladder condition. In addition to requesting VA examinations and opinions for those issues, the Board directed the RO to obtain outstanding private treatment records, VA medical records, and otherwise develop the Veteran's claims. The Board also remanded the issue of entitlement to a total disability rating based on individual unemployability (TDIU) in its November 2013 decision. In a March 2015 rating decision, the RO granted TDIU to the Veteran, effective March 20, 2006. That rating decision represents a fully favorable and final determination of the issue of entitlement to a TDIU. As such, the issue of entitlement to a TDIU is no longer on appeal.

With the rest of the requested development completed, the increased disability claim for a lumbar spine disorder and the claim for a separate rating for an associated bowel or bladder disorder are properly returned before the Board for appellate consideration. See Stegall v. West, 11 Vet. App. 268 (1998). Next, as explained below, the Board is granting service connection for chronic constipation as secondary to the Veteran's service-connected low back disability. The Board is cognizant of the procedural history listed above. However, given the developmental history of the Veteran's claim, the Board finds that it has jurisdiction over this claim. 

Last, in a December 2013 statement, the Veteran requested a hearing for his appealed issues. However, in a November 2015 statement, the Veteran withdrew his request for a hearing. Under 38 C.F.R. § 20.704(e), a request for a hearing may be withdrawn by an appellant at any time before the hearing. Thus, the Veteran's hearing request is deemed withdrawn. See 38 C.F.R. § 20.704(e) (2015).


FINDINGS OF FACT

1. From March 20, 2006, to December 1, 2010, the Veteran's service-connected low back disability was manifested by forward flexion of the thoracolumbar spine limited to not less than 55 degrees.

2. As of December 1, 2010, the Veteran's service-connected low back disability did not result in unfavorable ankylosis of the thoracolumbar spine or in incapacitating episodes having a total duration of at least 6 weeks in a year.

3. The Veteran's chronic constipation and voiding dysfunction are not neurological abnormalities associated with his low back disability. 

4. The Veteran's chronic constipation is proximately due to or the result of his low back disability. 


CONCLUSIONS OF LAW

1. From March 20, 2006, to December 1, 2010, the criteria for a rating in excess of 20 percent for a low back disability have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.3, 4.7, 4.71a, Diagnostic Codes (DCs) 5235 to 5243 (2015). 

2. Beginning December 1, 2010, the criteria for a rating in excess of 40 percent for a low back disability have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.3, 4.7, 4.71a, DCs 5235 to 5243 (2015). 

3. The criteria for a separate disability rating for bladder impairment have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.3, 4.7, 4.71a, Note 1. 

4. The criteria for service connection for chronic constipation have been met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. § 3.310 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. See e.g. 38 U.S.C.A. §§ 5103, 5103A (West 2014) and 38 C.F.R. § 3.159 (2015). VA provided adequate notice in a letter sent to the Veteran in April 2006.

Next, VA has a duty to assist the claimant in the development of the claim. This duty includes assisting him in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. 

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The RO has obtained service and VA treatment records, as well as private treatment records and records from the Social Security Administration (SSA) Also, VA afforded the Veteran relevant examinations and opinions in April 2006, August 2011, and April 2014. The resulting reports described the Veteran's appealed condition, took into consideration the relevant history, and provided an adequate rationale for the conclusions reached. The Board finds the examinations collectively adequate for adjudication purposes. See Stefl v. Nicholson, 21 Vet. App. 120, 123-24 (2007). 

The Board also finds compliance with the Board's November 2013 Remand directives. In the Board's November 2013 remand, this claims were remanded to obtain any additional relevant VA medical records and private treatment records. These records were obtained. Additionally, the Board directed that a medical examination for the Veteran's spine and any associated neurologic disorders be conducted. The examination was conducted in April 2014. Thus, there has been compliance with the Board's November 2013 Remand directives. Stegall v. West, 11 Vet. App. 268 (1998).

II. Increased Disability Ratings 

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2015). The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10 (2015). 

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability. 38 C.F.R. §§ 4.1, 4.2 (2014); Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7 (2015). It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21 (2015). 

As to claims of entitlement to an increased evaluation, as opposed to a higher initial evaluation, "the relevant temporal focus . . . is on the evidence concerning the state of the disability from the period one year before the claim was filed until VA makes a final decision on the claim." Hart v. Mansfield, 21 Vet. App. 505, at 509 (2007). This is because the effective date of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, if application is received within one year of such date. 38 U.S.C.A. § 5110 (b) (2) (West 2014).

The Board will consider entitlement to staged ratings to compensate for times since filing the claim when the disability may have been more severe than at other times during the course of the claim on appeal. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

In determining the appropriate rating for musculoskeletal disabilities, particular attention is focused on functional loss of use of the affected part. Functional loss may be due to pain, supported by adequate pathology and evidenced by visible behavior on motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40 (2015). The factors of joint disability include more movement than normal, less movement than normal, weakened movement, incoordination, excess fatigability, painful movement, swelling, deformity, or disuse atrophy. 38 C.F.R. § 4.45 (2015). Where functional loss is alleged due to pain upon motion, the provisions of 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45 must be considered. DeLuca v. Brown, 8 Vet. App. 202 (1995). 

Painful motion is an important factor of joint disability and actually painful joints are entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59 (2014); Burton v. Shinseki, 25 Vet. App. 1 (2011).

The Veteran's service-connected lumbar spine disability has been rated by the RO under the provisions of DCs 5235 through 5243. Disabilities of the spine are rated under the General Rating Formula for Diseases and Injuries of the Spine (for DCs 5235 to 5243). Under the General Rating Formula, a 20 percent evaluation is appropriate where there is forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine is not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent disability rating is assigned for forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. A 50 percent disability rating is assigned for unfavorable ankylosis of the entire thoracolumbar spine. A 100 percent disability rating is assigned for unfavorable ankylosis of entire spine. 38 C.F.R. § 4.71a. 

Note (1) instructs VA to evaluate any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, separately, under an appropriate diagnostic code. Note (2) provides that, for VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The normal combined range of motion of the thoracolumbar spine is 240 degrees. 38 C.F.R. § 4.71a. 

Note (5) provides that, for VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis.

The Board will also consider application of DC 5243 for rating intervertebral disc syndrome. Under DC 5243, a 40 percent disability rating is assigned when there is intervertebral disc syndrome with incapacitating episodes having a total duration of least four weeks but less than six weeks during the past 12 months. A 60 percent disability rating is assigned for intervertebral disc syndrome with incapacitating episodes have a total duration of at least 6 weeks during the past 12 months. 38 C.F.R. § 4.71a. An "incapacitating episode" is defined as a period of acute signs and symptoms due to intervertebral disc syndrome that required bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a.

Prior to December 1, 2010

The Veteran is in receipt of a 20 percent disability rating for his low back disability for the period from the date of his claim on March 20, 2006, to December 1, 2010. 

In the supporting statement for his March 2006 claim, he described needing opiates as well as steroid injections to control the pain in his lower back.

VA treatment records document a physical examination conducted in February 2006. At that time, lumbar flexion was within normal limits. However, extension at the waist elicited significant grimaces. Subsequent records from April 2006 document the Veteran receiving treatment for back pain. The pain was described as nearly constant, worse with bending. A physical examination showed an antalgic gait and a lack of comfort while sitting. There was pain in the lumbar region, and there was pain with extension. The attending treatment provider was unable to detect any palpable muscle spasm, though the Veteran complained of nightly spasms. The Veteran also complained of constipation. The Veteran was instructed to use a walking cane to help with his gait. 

VA first afforded the Veteran a spine examination in April 2006. During the clinical interview, the Veteran described being in constant pain. However, he denied there being any physician-directed bed rest. The Veteran denied being able to lift, bend, stand, or walk for more than 15 minutes, but also denied flare-ups. On physical examination, the Veteran presented as well-nourished, walked with a cane and a limp, and with a forward flexed posture. Range of motion measurements showed flexion up to 55 degrees, extension up to zero degrees, right and left lateral bending up to 15 degrees, right rotation to 20 degrees, and left rotation to 45 degrees. Pain was present through all ranges of motion. In an addendum, the examiner noted that there was no pain on range of motion or flare-ups in excess of the pain noted during the initial range of motion testing. The examiner also noted that the lumbar spine was not additionally limited by pain, fatigue, weakness, or lack of endurance following repetitive use. The examiner noted MRI findings of lumbar spine spondylosis with nerve root impingement. 

Subsequent VA medical records from 2006 document numerous complaints of, or treatment for, back pain, including treatment with pain medications with various levels of efficacy, from somewhat better to no improvement.

The Veteran received a VA neurology examination in October 2006. The examiner found normal posture and gait without the use of any assistive devices. The Veteran reported that his Methadone use for his low back pain caused side-effects that made him drowsy and led him to quit his job in February 2006. 

In addition to lower extremity symptoms, the Veteran also insisted that the examiner report his urinary frequency and urgency for most of the last 10 years. The examiner noted that the Veteran was also being treated for benign prostatic hypertrophy related to these symptoms. 

May 2007 VA treatment records show an abdominal CT scan revealing a markedly enlarged prostate. In June 2007 the Veteran underwent extensive evaluation for prostate pathology, and in October 2007, he had a transurethral resection of the prostate. 

Subsequent VA medical records continue to document complaints of, or treatment for, back pain and radiating pain in the legs.

In a November 2010 VA emergency care note, the Veteran complained of continued low back pain radiating down the left leg. He reported that pain limited his mobility and that he had chronic weakness in the legs and that they would "give out'. He also reported occasional paresthesias. The examiner diagnosed the Veteran with low back pain/sciatica. The examiner noted that since the Veteran had no significant new neurologic deficits, most of his strength issues were secondary to pain. The examiner noted that an MRI showed no evidence of acute compression of the spinal cord or nerve roots. 

A thorough review of the claims file shows no other records pertinent the Veteran's back disability from March 20, 2006, to December 1, 2010. The Board finds that the Veteran's lumbosacral sprain during that time was manifested by a forward flexion of the thoracolumbar spine of no greater than 55 degrees. Further, the evidence does not show incapacitating episodes. 

With regard to compensation for functional loss the Board has considered the examiner's statements that the Veteran had pain during forward flexion. The examiner did not detail at what point the Veteran experienced pain in the range of his forward flexion, and did not find that the pain limited motion at any point prior to the value given on the examination report. The examiner stated that the Veteran's forward flexion was from 0 to 55 degrees with pain. That measurement did not change on repetitive use testing, as evidenced in the examiner's addendum report. Taking into consideration pain on motion, the Veteran's spine disability did not result in limitation such that there was 30 degrees or less of forward flexion. Although the examiner stated that there was pain during forward motion, the existence of pain is not a basis for providing a higher rating; rather, it is functional loss due to pain that can give rise to a higher rating. Mitchell v. Shinseki, 25 Vet. App. 32, 37 (2011). Here, the Veteran's range of motion was not reduced, even on repetitive motion testing, which is evidence against a finding that he had additional functional loss due to pain. Further, there was no evidence of weakness, incoordination, fatigability, and the Veteran reported no flare-ups during this period. Thus, additional compensation for functional loss is not warranted.

Accordingly, the Board finds that the preponderance of the evidence is against the assignment of a rating greater than 20 percent for lumbosacral sprain prior to December 1, 2010. Therefore, that claim for increase must be denied. 38 U.S.C.A. § 5107(b) (West 2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Beginning December 1, 2010

The Veteran is in receipt of a 40 percent disability rating for his low back for this appeal period. 

On a December 14, 2010, VA neurosurgery consult note, the Veteran complained of back pain and leg pain/weakness/numbness. The Veteran reported staying in bed and lying down, but did not report how long or how often he did so in the past year. 

The Veteran received a VA examination in December 2010. The Veteran reported numbness and weakness in the left leg with pain and denied having physician prescribed bed rest in the last year. The Veteran reported that he was unable to lift more than a coffee cup, walk more than 15 minutes, stand more than 12 to 15 minutes or sit more than 15 minutes. The Veteran reported the same pain each time, except for 5 minute flares 4 or 5 times an hour. 

The December 2010 VA examiner noted that the Veteran walked with a limp using crutches and a back brace, appearing in significant discomfort. The examiner noted a flattened curvature of the spine and tenderness to palpation of the left paraspinal muscles and no spasms when palpated. The examiner notes strength in the lower extremities of 5/5, sensation decreased in the left lower extremity, 2+ reflexes bilaterally and no atrophy in the muscles, as well as normal muscle tone bilaterally. 

The December 2010 VA examiner noted that the Veteran was unable to do a range of motion examination due to significant pain. The examiner found the Veteran to have lumbar spine spondylosis with moderate radiculopathy of the bilateral lower extremities effecting L4 and L5. 

The VA examiner the Veteran denied spine related subjective complaints or the use of spine related assistive devices. The examiner also noted that the Veteran's spine did not affect his ability to function in his usual occupation or routine daily activities, he had no DeLuca criteria on repetitive testing of active range of motion, and no flare-ups or periods of incapacitation in the past year requiring physician prescribed bed rest. 

In July 2011, the Veteran visited the VA emergency room with complaints of increased back pain and fear of falling. The examiner found point tenderness at lumbosacral junction and bilateral buttocks, and minimal paraspinal tenderness. The Veteran was unable to bend over and touch the ground due to his back pain. The July 2011 VA medical provider found the Veteran to have chronic lower back pain and lumbosacral spondylosis on methadone, who presented with exacerbation of back pain consistent with radiculopathy.

The Veteran received another VA examination in August 2011, which included a claims file review. The Veteran reported a history of fatigue, decreased motion, stiffness, weakness, spasm and pain. The Veteran also reported that his pain was helped by methadone use, but that it was associated with craziness, confusion and hallucinations. He further reported that over the past year he had been in bed for up to six days with an incapacitating episode during the past 12 month period. He reported being at absolute bed rest. He also reported receiving a shot for his pain and receiving treatment at the emergency room for pain control. The Veteran reported use of a cane and crutches and that he was unable to walk more than a few yards. 

The August 2011 VA examiner found the Veteran's gait to have some hesitation, but to be overall normal. The examiner also found no ankylosis, spasm or atrophy. The examiner found guarding, pain with motion, tenderness and weakness. The VA examiner reported range of motion of: 10 to 10 degrees of flexion, extension, bilateral lateral flexion, and bilateral lateral rotation. There was objective evidence of pain on active range of motion.

In regards to neurological findings, the August 2011 VA examiner found the right lower extremity to have decreased vibration, normal position sense, decreased pain or pinprick and decreased light touch. The examiner made the same findings regarding the left lower extremity, except with decreased position sense. The examiner also noted a stocking glove abnormality and that no nerves were affected for both extremities. 

The August 2011 VA examiner diagnosed the Veteran with lumbosacral pain from degenerative arthritis of L4/L5. The examiner noted that the Veteran's pain was the limiting factor for a normal gait, range of motion, and activities of daily living. The examiner further noted that his examination and complaints were inconsistent with his pain being the limiting ability to his continuing to work as a bricklayer. The examiner further noted no evidence of neuropathy secondary to back pain with normal reflexes throughout, a stocking glove distribution to decreased light touch and pain sensation, normal plantars and no evidence of atrophy. The examiner found no evidence of nerve root impingement and no evidence of intervertebral disc syndrome. 

In a February 2012 VA treatment note, the Veteran complained of back pain and right leg weakness. The Veteran reported that the leg weakness comes and goes, but that he often dragged his leg. The VA medical provider found him to have a stable gait, though he leaned on a cane on the right side. The examiner found the Veteran's back pain persisted, although it was better with acupuncture, and added lidocaine patches. The examiner also questioned whether right leg weakness could be more related to the non-service-connected cervical stenosis. 

In February 2012, the Veteran received VA emergency care after he lifted a heavy object two weeks previously. The medical treatment provider noted that the Veteran had been seen the prior week and had acute worsening of neck, back, and right lower extremity pain with weakness.

The Veteran complained of fecal and urinary incontinence. The Veteran also reported that he had fallen after lifting a heavy object a few weeks prior, but had not fallen again since then. The Veteran ambulated with crutches, particularly when the pain was worse. The pain was worse with walking and standing, but did not bother him terribly when sitting or lying down. The examiner found the Veteran's lidocaine patch in place and tenderness over the spinous processes in the lumbar spine, but also with muscular tension in right paraspinous musculature. The examiner found no edema in the extremities and the Veteran's strength was 4+/5 for the left lower extremity and 3+/5 for the right lower extremity. The examiner further found a variable sensory exam in the lower extremities, but no loss of sensation in a dermatomal fashion or stocking/glove distribution. The examiner also found the Veteran able to ambulate without assistance, though he favors the right side.

The February 2012 VA medical provider diagnosed the Veteran with lumbar spondylosis and mild cervical stenosis. The examiner also noted that the Veteran presents for acute or chronic lower back pain and lower extremity weakness.

The Veteran visited the VA emergency room again in May 2012, again complaining of worsening pain after making his bed. He denied any trauma but reported that his legs got weak because the pain was so bad. The examiner noted that the Veteran requested a "shot" for the pain, that the Veteran was followed by pain management with use of acupuncture, and that he had been weaned off methadone due to possible cognitive effects.

The May 2012 VA medical provider found paraspinous tenderness/spasm to lower back and lower cervical region. The examiner noted that the extremities had no edema and normal range of motion and sensation/motor. The examiner diagnosed him with degenerative disc disease and flare of chronic neck/back pain.

The Veteran visited the VA emergency room again in August 2012 with fever and worsened back pain. The Veteran denied recent back injury or trauma. The examiner found no focal weakness, numbness, or changes in the bowel or bladder. Pain was the worst he has had but he has had radiation down both legs but at different times. The examiner noted that the extremities were 2+ patellar deep tendon reflexes and that there was 4/5 strength in bilateral hip flexors, quads, hamstrings, plantar flexion, and dorsiflexion. The examiner also found no edema, redness or numbness. The examiner reported the back had a lidocaine patch, with no redness or tenderness along the spine or paraspinous muscles. The examiner further noted that the lumbar x-ray showed unchanged discogenic disease, L2 through L5, with associated anterior spondylosis; there was increased interfacet spondylosis at L4-L5 and L5-S1. The examiner found that the back pain was getting better and was not far off baseline today. There was no weakness or other signs of cord compression. The examiner found pain possibly worse due to infection.

Next, the RO received private treatment records from August 2013 that document a series of epidural steroid injections for low back pain with no significant improvement. 

In January 2014, the Veteran submitted two buddy statements that describe the Veteran's intermittent inability to walk due to severe pain as a result of his low back disability, among other disabilities. The Veteran's spouse submitted another buddy statement in April 2014 that described the same symptoms. 

Pursuant to the Board's November 2013 remand, the Veteran was afforded another examination for his low back disability in April 2014. The examiner diagnosed the Veteran with degenerative arthritis of the spine and lumbar spondylosis. During the clinical interview the Veteran reported having flare-ups that impacted his lumbar spine. These flare-ups would result in the Veteran hardly being able to walk on some days. When experiencing severe pain, the Veteran would report to the emergency room for epidural steroid injections. 

Initial range of motion measurements showed forward flexion ending at 30 degrees with pain at 15 degrees. Extension ended at 5 degrees with pain. Right lateral flexion ended at 10 degrees with pain beginning at five degrees. Left lateral flexion ended at five degrees with pain. Right and left lateral rotation ended at 10 degrees with pain beginning at five degrees. Range of motion measurements remained the same after repetitive-use testing. The examiner indicated that the Veteran did not have additional limitation following repetitive-use testing. The examiner further indicated that the Veteran's spine disability caused less movement than normal, weakened movement, excess fatigability, incoordination, pain on movement, disturbance of locomotion, and interference with sitting, standing, and weight-bearing. These limitations resulted in functional loss. The examiner found no ankylosis of the spine. The examiner did find that the Veteran had IVDS of the lumbar spine, but denied that the Veteran had any incapacitating episodes over the past 12 months as a result of IVDS of the lumbar spine. 

Subsequent VA treatment records document treatment for back pain and the receipt of epidural steroid injections for severe instances of pain. However, they are only significant for showing that the Veteran experiences pain as a result of his low back disability. 

At the outset, the Board finds that the Veteran does not meet the criteria for a disability rating in excess of 40 percent for a low back disability under the General Rating Formula for Diseases and Injuries of the Spine, which was used to assign this evaluation. The General Rating Formula applies with or without symptoms such as pain. DeLuca and associated regulations do not apply because a 40 percent evaluation is the maximum allowable disability rating for limitation of motion of the thoracolumbar spine. See Johnston v. Brown, 10 Vet. App. 80 (1997). A higher rating under the General Rating Formula is not warranted unless there is unfavorable ankylosis present. In the April 2014 VA examination, ankylosis was specifically denied by the examiner. Moreover, there is no indication in the evidence of record that the Veteran's lumbar spine has been ankylosed. Thus, the Board finds that a higher rating based on ankylosis is not warranted under the General Rating Formula. See 38 C.F.R. § 4.71a , DCs 5235-5243. 

The Board also finds that the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes does not provide for a higher disability rating. 38 C.F.R. § 4.71a , DC 5243 (2015). In the April 2014 VA examination, the Veteran reported having suffered from flare-ups. He described them as rendering him unable to walk on some days. The examiner noted, however, that the Veteran did not have any incapacitating episodes during the previous year. As such, there is no finding that the Veteran had incapacitating episodes over the previous year. Nothing in the medical records indicates that flare-ups resulted in physician prescribed bed rest for a duration of 6 weeks or more during the previous year, warranting a higher disability rating. 

Accordingly, the Board finds that the preponderance of the evidence is against the assignment of a rating greater than 40 percent for the Veteran's low back disability. 38 U.S.C.A. § 5107(b) (West 2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).



Associated Objective Neurologic Abnormalities

Note (1) of the General Rating Formula for Diseases and Injuries of the Spine instructs VA to evaluate any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, separately, under an appropriate diagnostic code. 

Pursuant to the directives in the June 2013 JMR, in November 2013, the Board remanded the issue of whether a separate rating should be assigned for any associated bowel or bladder condition. The Veteran was afforded an examination and opinion for this issue in April 2014. Regarding any bowel impairment, the examiner diagnosed the Veteran with chronic constipation due to opioids. By way of history, the examiner explained that the Veteran had been on some form of opioid medication for relief of his back pain since 2006. These medications included methadone and oxycodone. Consequently, the Veteran had needed other medication to counteract the chronic constipation caused by the opioids. The examiner reviewed the Veteran's medical records, including a recent MRI of the lumbar spine, which showed degenerative disc disease but not any major spinal cord impairment. Accordingly, the examiner concluded that chronic constipation was not an associated neurologic condition, but was caused by opioids administered to treat back pain. 

Regarding any potential associated bladder impairment, the examiner noted that the Veteran was diagnosed with benign prostatic hypertrophy in 2006. As a result, the Veteran took Flomax to help with obstructive voiding symptom, including urgency. The examiner attributed the Veteran's voiding dysfunction to the benign prostatic hypertrophy. The examiner concluded that the voiding dysfunction was not related to any neurologic disorder caused by the Veteran's low back disability but rather to the Veteran's enlarged prostate and resulting overflow. 

This opinion was corroborated by a December 2015 VA examiner, who was asked to opine whether the Veteran's bladder impairment was at least aggravated by his service-connected lumbar lordosis. The December 2015 VA examiner noted the April 2014 examiner's conclusion that the Veteran's voiding dysfunction was not related to any neurological disorder but rather to his benign prostate hypertrophy. The December 2015 examiner agreed with this assessment, and opined further that the Veteran's lumbar lordosis did not aggravate the Veteran's bladder impairment. 

The Board finds the April 2014 and December 2015 VA examination and opinions to be the most probative evidence of record regarding the question of whether the Veteran has any neurologic bladder or bowel abnormalities that are associated with his low back disability. The examination is probative because the examiner provided a logical rationale for her opinion and specifically addressed the Veteran's history and clinical reports. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (explaining that most of the probative value of a medical opinion comes from its reasoning).

The Board is aware of the Veteran's statements regarding the nature of his voiding dysfunction and his chronic constipation. In this regard, the Veteran's statements are lay statements that purport to provide a nexus opinion. The Board finds such opinions to be not competent. Although it is error to categorically reject a lay person as competent to provide a nexus opinion, not all questions of nexus are subject to non-expert opinion. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). Whether a layperson is competent to provide a nexus opinion depends on the facts of the particular case. In Davidson, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) drew from its earlier decision in Jandreau v. Nicholson to explain its holding. Id. 

In that earlier decision, the Federal Circuit stated as follows: "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

The Federal Circuit provided an example, stating that a layperson would be competent to identify a simple condition such as a broken leg, but not competent to provide evidence as to a more complex medical question such as a form of cancer. Id. at n.4. Also of note is that the Veterans Court has explained that non-expert witnesses are competent to report that which they have observed with their own senses. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). 

Taking Davidson, Jandreau, and Layno together, leads the Board to the conclusion that the complexity of the question and whether a nexus opinion could be rendered based on personal observation are factors in determining whether a non-expert nexus opinion or diagnosis is competent evidence. 

In the instant case, the question of whether chronic constipation and voiding dysfunction are neurologic disorders associated with a low back disability is not something that can be determined by mere observation. Nor is this question simple, as it requires clinical testing and training to make the appropriate interpretations and conclusions about what the testing demonstrates in conjunction with the symptoms reported. As such, the Board finds that the Veteran's statements as to the nature of his bowel and bladder conditions are not competent evidence.

With regard to the issue of constipation and a voiding dysfunction, the physicians did not attribute these conditions to be neurological disorders caused by the Veteran's low back disability. Thus, the Board finds that separate ratings for these conditions may not be assigned by way of Note 1 of the General Rating Formula for Diseases and Injuries of the Spine. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.71a. 

However, as mentioned in the Introduction, the Board is granting service connection for chronic constipation. Service connection is warranted for a disability which is aggravated by, proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310 (2015). Any additional impairment of earning capacity resulting from a service-connected condition, regardless of whether or not the additional impairment is itself a separate disease or injury caused by the service-connected condition, also warrants compensation. Allen v. Brown, 7 Vet. App. 439 (1995). When service connection is thus established for a secondary condition, the secondary condition is considered a part of the original condition. Id.

In the instant case, the Veteran is service connected for a low back disability. As established by the April 2014 VA examiner, the medication required to treat the Veteran's low back caused chronic constipation. This finding is affirmed by a December 2015 VA examiner, who was asked to opine whether the Veteran's lumbar lordosis aggravated the Veteran's constipation. The examiner found no aggravation or causation and separately asserted that the Veteran's constipation was caused by opioids taken to treat the lumbar lordosis. Thus, although this is not a neurological condition caused by the service-connected low back disability, the evidence clearly establishes that the Veteran's chronic constipation is proximately due to or the result of his low back disability as it is caused by the medications required to treat his service-connected low back disability. Thus, service connection for chronic constipation is warranted. 38 U.S.C.A. § 5107(b) (West 2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Entitlement to a rating in excess of 20 percent for a low back disability from March 20, 2006, to December 1, 2010, is denied. 

Entitlement to a rating in excess of 40 percent for a low back disability as of December 1, 2010, is denied. 

A separate disability rating for a bladder impairment is denied. 

Service connection for chronic constipation is granted.




______________________________________________
GAYLE E. STROMMEN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs